Case:12-60724-JSD Doc#:58 Filed:01/15/14 Entered:01/15/14 15:29:00 Page 1 of 12

**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Brunswick, Georgia
By jbergen at 3:06 pm, Jan 15, 2014

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Statesboro Division

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 CASE |
| | ) | NO. <u>12-60724-JSD</u> |
| DANIEL B. GREEN & | ) | |
| BROOKE T. GREEN | ) | |
| | ) | |
| Debtors | ) | |
| _____ | ) | |
| | ) | |
| | ) | |
| STATESBORO MALL, LLC | ) | |
| | ) | |
| Movant | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| DANIEL B. GREEN & | ) | |
| BROOKE T. GREEN | ) | |
| | ) | |
| Debtors/Respondents | ) | |

### OPINION AND ORDER DENYING STATESBORO MALL LLC'S APPLICATION FOR ADMINISTRATIVE EXPENSES

This matter is before me on the Application for Administrative Expenses ("Application") filed by Statesboro Mall LLC ("Landlord") on July 2, 2013. Before filing a joint chapter 7 petition with his wife, Debtor Daniel Green guaranteed a non-debtor entity's payment under a lease of non-residential real property. The non-debtor entity, Crooked Run Investments LLC ("Tenant"), defaulted under the lease and vacated the property prepetition in early November 2012. The Debtors filed their

AO 72A
(Rev. 8/82)

petition on December 19, 2012. The Landlord recovered possession of the property postpetition.

The Landlord now seeks payment of administrative expenses pursuant to §§ 365(d)(3) and 503(b)(1) for postpetition rents from an unexpired lease of nonresidential real property. Both the Debtors and the chapter 7 Trustee oppose the Application on the grounds that §§ 365 and 503(b)(1) do not apply since both the lease and the guaranty were executed prepetition and, therefore, liabilities arising from these agreements were fixed prepetition.

A hearing was held on September 16, 2013, after which I took the matter under advisement. After reviewing the facts of the case and the parties' post-hearing briefs, I find that neither § 365(d)(3) or § 503(b)(1) entitle the Landlord to payment of administrative expenses. For this reason and those that follow, the Application is denied.

### FINDINGS OF FACT

The facts in this case are not in dispute. On January 1, 2006, the Landlord and Tenant entered into a nonresidential ground lease agreement ("Lease") for the use of an outparcel of land consisting of approximately .64 acres ("Property"). (See Appl. for Admin. Exps. ¶ 4, ECF No. 43). The property was to be operated by the Tenant as Bruster's Ice Cream. See id. In conjunction with the Lease, the Debtor executed a Mall Outparcel

2

AO 72A
(Rev. 8/82)

Lease Guaranty Agreement (the "Guaranty") personally guaranteeing the Tenant's prompt performance under the Lease. (See Ex. B, ECF No. 43).

The Lease was for a term of ten years, expiring on April 30, 2017. (See Appl. for Admin. Exps. ¶ 6, ECF No. 43). The Lease required the Tenant to pay rent of $3,083.33, due on the first day of each calendar month. See id. at ¶ 9. Section 7.1 of the Lease further required the Tenant to continuously operate on the property for the duration of the lease term. See id. at ¶ 7. Section 19.1 of the Lease defined events of default:

> (A) The failure by Tenant to make any payment of Minimum Rent, Additional Rent, Monthly Rent or any other payment required to be made by Tenant hereunder (collectively "Rent"), when due, where such failure shall continue for a period of five (5) days after written notice thereof from Landlord to Tenant, or
>
> (B) The failure by Tenant to observe or perform any of the covenants, conditions or provisions of this Lease to be observed or performed by Tenant, other than Paragraph (A) above, where such failure shall continue for a period of thirty (30) days after written notice thereof from Landlord to Tenant ...

Id. at ¶ 14.

The Tenant closed its business and vacated the premises on October 31, 2012. (See Application at ¶8, ECF No. 43). The Landlord gave the Tenant notice of its breach under section 19.1 for failure to continuously operate throughout the Lease term and made demand for cure of the breach by correspondence dated

3

November 5, 2012. (See Demand Letters, Ex. C of Application, ECF No. 43).

The Tenant also failed to pay rent for November. (See Application at ¶ 15). On November 20, 2012, the Landlord gave Tenant written notice of its breach for failure to pay rent and made a demand for the overdue rent and possession of the property. See id. at ¶ 16. The November 20 letter also demanded the possession of the Property:

> Please let this writing evidence a notice of Tenant's default and demand for payment of $3,083.33 within five (5) days of the date of this writing. If said sum is not received by our office within five (5) days, we will be forced to begin immediate legal action. In the alternative and without waiving Landlord's claim for the past due and future rent due, this writing shall also constitute the Landlord's demand for possession of the Premises. In the event of an eviction, Tenant shall be obligated and responsible for continued payment of rent until the expiration of the Lease or until the Premises is subleased (Landlord may have the right to declare all rents for the entire remaining term to be immediately due and payable to Landlord), and any shortfall in rent as a result of Tenant's default including, but not limited to, legal fees associated with the eviction and costs of reletting.

(See Demand Letter, Ex. C to ECF No. 43)(emphasis added). The Tenant did not cure its default in response to the Landlord's demands. See id. at ¶ 17.

According to the terms of the Lease, the Tenant defaulted on November 25 - five days after the Tenant received the letter demanding unpaid rent and possession of the Property. (See Application at ¶ 14-17). Upon default, the Lease provided the

4

Landlord with the option to pursue a number of remedies without providing further notice or demand to the Tenant. (See Lease at 13, Ex. A to ECF No. 43). However, the factual record does not establish which remedy, if any, the Landlord chose to pursue.

The Debtors filed their petition on December 19. (See ECF No. 1). Therefore, the Tenant's default on the Lease and the Debtor's subsequent liability as guarantor both occurred prepetition. The Guaranty obligates the Debtor to:

> "guarantee the prompt payment by Tenant of all rentals and all other sums payable by Tenant under said Lease, and the faithful and prompt performance by Tenant of each and every one of the terms, conditions and covenants of said Lease to be kept and performed by Tenant as such are defined in the Lease."

(See Guaranty Agreement, Ex. B to ECF No. 43). The Guaranty further grants the Landlord the right to "proceed against [the] Guarantor hereunder following any breach of default by Tenant without first proceeding against Tenant and without previous notice to or demand upon either Tenant or Guarantor." See id. Nothing in the Guaranty allows the Debtor to assume, assign, or reject the Lease, even after curing the Tenant's default. See id. Simply put, the Guaranty merely establishes the Debtor's liability for the Tenant's performance; it does not grant the Debtor any interest in the Lease itself.

From the petition date until the Debtors received their discharge on April 22, 2013, the Debtors did not occupy or use

5

the property. (See Brief in Response to Application at 2-3, ECF No. 57). On April 24, 2013, the Tenant surrendered its interest in the Lease to the Landlord. (See Ex. A. to Application, ECF No. 43). On July 1, 2013, the Landlord re-let the property for a period covering the remaining four years of the Tenant's original Lease term. See id.

On July 2, 2013, the Landlord filed two documents with the Court: 1) a proof of claim for $8,926.42 for lease rejection damages pursuant to § 502(b)(6); and 2) the Application for Payment of Administrative Expenses of $14,510.91 in postpetition rent, fees, and interest pursuant to §§ 365(d)(3) and 503.

## CONCLUSIONS OF LAW

The Landlord bases its right to payment under § 365(b)(3) on the Guaranty. In doing so, the Landlord relies on an extremely broad reading of 11 U.S.C. § 365(d)(3) which provides in relevant part:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3).

According to the Landlord, Section 365(d)(3) does not specify that the debtor must be the landlord or tenant of the unexpired lease of nonresidential real property. Rather, the

statute's use of the word "any" creates a postpetition requirement that the Trustee perform the Debtor's obligations under all unexpired leases that impose an obligation on the Debtor—including leases to which the debtor is merely a guarantor. Thus, the Landlord argues that the Debtor's liability as guarantor continued to accrue postpetition as a § 365(b)(3) obligation under the Lease until the Lease was assumed or rejected. According to the Landlord, the Debtor, as Guarantor, effectively rejected the Lease and Guaranty when the Tenant surrendered the Property on April 24, 2013. Moreover, the Landlord maintains that payment for the Debtor's obligations under the Lease is entitled to administrative expense priority notwithstanding the stringent "actual and necessary" requirements of § 503(b)(1). I find the Landlord's broad interpretation of § 365(d)(3) untenable for several reasons.

First, section 365(d)(3) applies only to non-residential real property leases *of the debtor*. Section 365 allows the trustee or debtor-in-possession to "assume or reject any executory contract or unexpired lease **of the debtor**." 11 U.S.C. §365(a) (emphasis added). It does not allow a debtor to assume or reject contracts and leases to which the debtor was not a party.

Here, the Debtor was not a party to the Lease. So, the Lease between the Landlord and Tenant could not have been an unexpired

lease as to the Debtor. Although the Debtor was responsible for the Tenant's performance as guarantor, the Debtor's liability was based upon the Guaranty, not an 'unexpired lease' within the meaning of § 365. The limited scope of § 365(d)(3) is supported by the language of § 365(d)(4), which establishes the time limits during which § 365(d)(3) applies:

> [A]n unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of—
> - **(i)** the date that is 120 days after the date of the order for relief; or
> - **(ii)** the date of the entry of an order confirming a plan.

11 U.S.C. §365(d)(4).

Applying the Landlord's interpretation of § 365(d)(3), the time limits of § 365(d)(4) would not apply to its request for administrative expenses since its right to payment is not based on "an unexpired lease of nonresidential real property under which the debtor is the lessee." Such an interpretation is at odds with the clear plain language of § 365 in its entirety.

Second, the Debtor had no contract rights or property interest in the Lease that the chapter 7 Trustee could have assumed or rejected. Section 365(d)(3) grants administrative expense priority to payment of obligations arising under an unexpired lease while the trustee or debtor-in-possession decides

8

whether to assume or reject the lease. Nothing in the statute grants a guarantor of a lease the power to accept or reject the underlying lease agreement. See 11 U.S.C. § 365.

Moreover, nothing in the Guaranty grants the Debtor any kind of property interest in the Lease or leased property. Section 365 simply does not apply to contracts or leases under which the debtor has no rights. See Counties Contracting & Constr. Co. v. Constitution Life Ins. Co., 855 F.2d 1054, 1061 (3d Cir. 1988) (life insurance policy that expired postpetition could not be assumed); Texscan Corp. v. Commercial Union Ins. Cos. (In re Texscan Corp.), 107 B.R. 227, 230 (B.A.P. 9th Cir. 1989) ("It is axiomatic that before 11 U.S.C. § 365 can apply a contract must exist. If a contract has expired by its own terms then there is nothing left to assume or reject."); In re Balco Equities Ltd., Inc., 312 B.R. 734, 750 (Bankr. S.D.N.Y. 2004) (forbearance agreement to avoid foreclosure proceedings that expired postpetition could not be assumed); see also Georgia Heritage Assoc., LP v. Westfield Apartments, LLC (In re Westfields Apartments, LLC), No. 08-12573, 2010 WL 2179622, *4 (Bankr. S.D. Ga. Apr. 27, 2010) ("Even if a contract is executory at the time of the bankruptcy filing, the right to assume that contract under § 365 is extinguished if the contract expires by its own terms or otherwise ceases to exist.").

Likewise, the Landlord's request for payment of postpetition rents as administrative expenses is not justified under 11 U.S.C. § 503. This same factual scenario was addressed by the Bankruptcy Court of the Southern District of New York. See In re Episode USA, Inc., 202 B.R. 691 (Bankr. S.D.N.Y. 1996). In Episode, the debtor guaranteed a lease of a non-debtor affiliate on non-residential real property. The non-debtor defaulted under the lease and vacated the premises prepetition, and the landlord requested payment of a priority administrative expense against the debtor. Id. at 692. The court considered, in part, § 503(b)(1), and denied the request for an administrative expense, stating as follows:

> Landlord's administrative priority claim cannot be predicated on the guaranty agreement because both the lease and guaranty were executed pre-petition and the liabilities arising therefrom were fixed at that time. . . . There is no other basis for according the claim administrative priority status.
>
> To be entitled to administrative priority treatment, a claim "must have arisen from a transaction with the estate or consideration must have been given to the estate, and the debt must have benefited the estate." (Citations omitted). Even courts that have expanded the concept of an administrative expense beyond the "benefit to the estate" rubric limit that priority to claims arising in connection with the business or activities carried on by a debtor-or[ sic ]-possession subsequent to the petition date.
>
> Episode [debtor] received no benefit from the lease since it did not occupy the premises and was not a party to the lease contract. Landlord has not suggested any other basis for finding that debtor benefitted from

> Remington's use of the premises. In the absence of any demonstrated benefit, landlord's claim against Episode for rent accrued under the lease after the commencement of this chapter 11 case is not entitled to priority as an administrative expense.

Id. at 696(citations omitted).

Just as no benefit was received by the debtor in Episode, neither the Debtor nor the chapter 7 bankruptcy estate here received any benefit from the use or possession of the leased property. Thus, the Lease between the Tenant and the Landlord and any rents due pursuant to that lease, if such lease existed postpetition, cannot be considered "the actual, necessary costs and expenses of preserving the estate." See In re Subscription Television of Greater Atlanta, 789 F.2d 1530, 1532 (11th Cir. 1986). Therefore, no basis exists for an administrative expense claim in this matter.

Any claim by Statesboro Mall LLC against Mr. Green as guarantor of the lease, is simply a general unsecured claim properly addressed under 11 U.S.C. § 502(b)(6). See In re Southern Cinemas, Inc., 256 B.R. 520, 534 (Bankr. M.D. Fla. 2000). Any potential payment on the claim is limited to a pro rata share along with other general unsecured creditors from estate distributions by the chapter 7 Trustee.

11

**ORDER**

Based on the foregoing Findings of Fact and Conclusions of Law, the Application for Administrative Expenses is **ORDERED DENIED**.

_____
JOHN S. DALIS
United States Bankruptcy Judge

Dated at Brunswick, Georgia,
this 15 day of January, 2014.